JAY D. CUDNEY, Appellant, *v.* R. B. PHILLIPS MANUFACTURING COMPANY, Respondent.

First Department, December 31, 1917.

Master and servant — action for breach of contract of employment — evidence raising questions for jury — erroneous dismissal of complaint.

Action to recover damages for breach of a contract employing the plaintiff to build up a sales organization for the defendant. Evidence examined, and *held*, that the jury would have been justified in finding that the plaintiff made an unqualified acceptance of the defendant's offer of employment and that a dismissal of the complaint was error.

*Held further*, that the contract of employment was binding although the plaintiff's duties were not definitely fixed.

While it is common to specify duties in a contract of employment it is not an essential where the contract makes the employer the judge of what is to be done and names the one whose orders the employee undertakes to carry out.

*Held further*, that the evidence might justify a finding that the employment was for the term of one year.

First Department, December, 1917.    [Vol. 181.

APPEAL by the plaintiff, Jay D. Cudney, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 4th day of June, 1917, upon a dismissal of the complaint by direction of the court at the close of plaintiff's case.

*Woolsey A. Shepard* of counsel [*Thomas & Houghton*, attorneys], for the appellant.

*Francis P. Pace*, for the respondent.

SHEARN, J.:

This is an appeal from a judgment dismissing the complaint in an action brought to recover damages for breach of a contract of employment, negotiated partly orally and partly in letters between the plaintiff and one Phillips, the president of the defendant. There was a good deal of informality about the negotiations, evidently due to the fact that the parties were intimate friends, but a review of the evidence shows that the plaintiff made out a *prima facie* case, consisting of an offer by the defendant and what the jury would have been warranted in finding to be an unqualified acceptance of the offer by the plaintiff.

Plaintiff, who was earning over $5,000 a year in a responsible position in Buffalo, was asked to meet Phillips in Ottawa and did so on December 7, 1915. At the interview, Phillips outlined his plan for building up and developing the business of the defendant, which was expected to absorb various other companies at the conclusion of the war, and expressed his desire to employ the plaintiff to build up a sales organization and wanted him to begin work on January 1, 1916. Plaintiff demurred at leaving his present employers on such short notice and Phillips said that February first would be satisfactory. Plaintiff suggested a salary of $6,000 a year, which Phillips agreed to. Phillips told plaintiff to go home and write him his understanding of the arrangement and " if it is as I understand it, I will accept it." Plaintiff wrote such a letter on December 9, 1915, stating his understanding, thanking Phillips for the offer, and saying " you may consider the same accepted, providing you let me know promptly as to what capacity I will be expected to fill." On December seventeenth

Phillips wrote, acknowledging the letter of December ninth and advised plaintiff that his letter " is exactly according to my understanding with you and contents are satisfactory to me." It will be noted that this did not definitely close a contract because Phillips did not let plaintiff know in what capacity he was to be employed, a condition imported by plaintiff in his qualified acceptance. On December 20, 1915, plaintiff wrote Phillips asking him to supplement his letter of the seventeenth by advising plaintiff approximately concerning the work that he was expected to do and in which one of Phillips' various companies he was to be employed. On January 8, 1916, Phillips replied, using the stationery of the defendant corporation and signing the letter " R. B. Phillips Manufacturing Co., Ralph B. Phillips, President," saying he would expect plaintiff to report on the first of February " although I have not as yet decided what your duties are to be, but will advise you between now and then." While this did not meet plaintiff's conditions for acceptance, it clearly left the offer open. On January fourteenth plaintiff acknowledged the letter of January eighth and informed Phillips that he had made arrangements to make his headquarters at the Engineers Club in New York and " I trust that you will find it convenient and agreeable to let me know what position you propose to place me in, at the earliest possible date." He received no letter replying to this, so the matter was still unclosed on January 14, 1916, but the offer was still open. On January twenty-fourth Phillips wired plaintiff: " Report to me at Hotel Belmont New York February first." In response to this telegram plaintiff reported at the Belmont on February first. He did not find Phillips there but was informed that he was expected in a day or two, and continued to report until the ninth or tenth. He greeted Phillips with the words: " Well, boss, what are the orders? " Phillips told him that his hands were tied temporarily and requested plaintiff to "wait around." Plaintiff reported from day to day but received no instructions and protested to Phillips who told the plaintiff that he had nothing to worry about because he had " a perfectly good contract " with the defendant. In the latter part of February plaintiff wrote to the defendant, to Phillips as an individual and to one of the

latter's companies, the American Steam Gauge and Valve Manufacturing Company, whose stationery was used for some of the correspondence, and demanded his salary. On March second the defendant replied denying any contract. Thereupon plaintiff obtained other employment at a much smaller salary than that promised by Phillips and much less than that paid him in the position he had given up in reliance upon the offer of Phillips.

The plaintiff claims, on this evidence, that he was employed on February first for a year. Defendant insists that the matter was never closed. It is very clear that the defendant's offer was open up to February first. The question is whether plaintiff unqualifiedly accepted the offer. He had previously shown that he was entirely willing to accept the offer provided his position and duties were made clear. This proviso was put forward by him in his own interest and it was entirely competent for him to waive it if he saw fit. His claim is that he did waive it and that this is shown by his reporting for orders on February first in pursuance of Phillips' telegram and by unqualifiedly offering to go to work under whatever orders Phillips had for him. Of course plaintiff's conduct is open to the interpretation that he came to New York to negotiate the matter further and that his calling at the Belmont was for that purpose and was not an acceptance of the offer, but it seems to us that it would have been an entirely reasonable inference that plaintiff abandoned the condition that he imported into his qualified acceptance and accepted defendant's offer unqualifiedly. In such case, of course, the inferences are to be drawn by the jury. Accordingly the court erred in dismissing the complaint.

Respondent further claims that there was no binding agreement because plaintiff's duties were not definitely fixed, but this point is not well taken, for the evidence shows that Phillips told plaintiff at the original interview that he wanted to put him in charge of building up a sales organization for the defendant. This is not so indefinite as to render the agreement a nullity. It is true that this sales organization was not to be built up until the end of the war, but in the meantime plaintiff was to work in the development of the company under whatever orders Phillips gave him. While it is common

to specify duties in a contract of employment it is not an essential where the contract makes the employer the judge of what is to be done and names the one whose orders the employee undertakes to carry out.

Respondent also claims that there was no agreement for a year. This point was not raised below. However, the fact that the offer was of " $6,000 a year," and the further fact that during the conversation between Phillips and the plaintiff at Ottawa, Phillips said that he hoped to pay plaintiff more " at the end of the year," would authorize the jury, under all the circumstances of the case, in finding that the term of the offer was one year.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., LAUGHLIN, SCOTT and DOWLING, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.